ASH

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

K.K.,

       Petitioner,

v.

Fred Figueroa, *et al.*,

       Respondents.

No. CV-26-00115-PHX-JJT (JZB)

**ORDER**

Petitioner filed this action under § 2241 challenging her immigration detention, and sought a temporary restraining order. (Docs. 1, 2).  On January 20, 2026, the Court issued an Order directing Respondents to answer the Petition.  (Doc. 4).  By further order dated March 17, 2026, the Court directed the parties to provide additional information about the status of Petitioner's ongoing immigration proceedings.  (Doc. 15).  Briefing is now complete (Docs. 5, 9, 16, 17) and, upon review, the Court will grant the Petition in part and order that Petitioner receive a bond redetermination hearing within seven days.

## I.    BACKGROUND.

Petitioner is a native of India. (Doc. 1 at 4).  On January 9, 2025, Petitioner entered the United States and was immediately taken into immigration custody and placed into expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1).  (*Id.* at 5; Doc. 5 at 2).  Petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture.  (Doc. 1 at 5).  Petitioner was referred for a credible fear interview, was found to have a credible fear of persecution if returned to India, and was referred to an Immigration Judge (IJ) for further proceedings pursuant to 8 U.S.C. § 1229a.

(Doc. 5 at 2). On February 27, 2026, the IJ denied Petitioner's requests for relief, and ordered her removed from the United States. (Doc. 16). Petitioner appealed that decision to the Board of Immigration Appeals, and her appeal remains pending as of the date of this Order.

## II.   28 U.S.C. § 2241 WRIT OF HABEAS CORPUS AND JURISDICTION

Respondents argue that this Court "has no jurisdiction to second-guess Respondents' decision to deny [Petitioner] parole," and the Petition must therefore be dismissed. (Doc. 5 at 3).

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" make clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[1] challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

. . .

---

[1]   Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent. *See, e.g., Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (stating:

> This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.[)]

(cleaned up).

Respondents conflate Petitioner's challenge to her prolonged detention with their decision not to grant her parole, recasting the Petition as a "challenge to Respondents' decision not to parole her." (Doc. 5 at 4). But the question of Respondents' statutory discretion to deny parole is separate from the question of whether civil detention can become so prolonged that it violates the Constitution. *See e.g. Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem."). Petitioner expressly challenges her "unlawful incarceration" and seeks a declaration that her continued detention violates, in part, the Due Process Clause. (Doc. 1 at 1, 23; *see also* Doc. 9 at 2 (the Petition "invokes claims on multiple grounds, including the unconstitutionality of her prolonged detention"). This Court has jurisdiction to address such claims. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

## III.    DISCUSSION.

As of the date of this Order, Petitioner has been detained for more than 15 months without any determination whether she is a danger to the community or a flight risk. As such, Petitioner asserts four claims for relief in the Petition: (1) that her continued detention violates the Fifth Amendment; (2) that the failure to release her as a reasonable accommodation violates the Rehabilitation Act; (3) that the failure to follow relevant regulations violates the Administrative Procedure Act and the *Accardi* Doctrine; and (4) the failure to provide an individualized determination of flight risk and danger violates that Administrative Procedures Act, Immigration and Nationality Act, and their implementing regulations. (Doc. 1 at 19-22).

### A. Due Process.

The Court begins with Petitioner's Due Process claim. The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s]

- 3 -

whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### 1. Liberty Interest.

"A liberty interest may arise from the Constitution itself[2] . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). If a liberty interest is found, the Court then determines whether the administrative procedures are sufficient considering the "particular situation."[3] *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In the instant action, neither party has directly addressed whether Petitioner possesses a cognizable liberty interest. Petitioner suggests that she does have a liberty interest. (*See e.g.* Doc. 1 at 3 (Petitioner's "continued detention [] has adversely and severely affected her liberty."); Doc. 2 at 9 (Petitioner's "private interest in her liberty is profound.")). Respondents urge, however, that because "[p]arole under Section 1182(d)(5) is committed to the sole, unreviewable discretion of immigration officials," Petitioner has no entitlement to demand release. (Doc. 5 at 2).

In *Wong v. Immigr. and Naturalization Serv.*, 373 F.3d 952 (9th Cir. 2004), the Ninth Circuit Court of Appeals addressed whether a noncitizen has a liberty interest in temporary parole. *See Wong*, 373 F.3d at 967. The court found that "[t]he INA does not create any liberty interest *in temporary parole* that is protected by the Fifth Amendment." *Id.* at 968 (emphasis added). "Rather, the statute makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General." *Id.*

---

[2] "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

[3] The Court notes that due process is a flexible concept. This, however, "does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey*, 408 U.S. at 481.

While *Wong* has some superficial relevance, the Court declines to conflate temporary parole with a request for a bond hearing before a neutral decisionmaker. Petitioner does not assert a liberty interest in temporary parole.  (*See* Doc. 1 at 7 ("Asylum seekers, like [Petitioner], who present themselves at a port of entry to the United States are 'persons' who may not be deprived of liberty without due process of law under the Due Process Clause.")).  Hence, *Wong* is inapplicable to the case at hand.

In *Wong Wing v. United States*, 163 U.S. 228 (1896), the Supreme Court "contrasted the case of an immigrant who could not challenge his immigration officer's 'exclusive authority to determine whether a particular alien seeking admission into this country' was so entitled, with another who could challenge, on due process grounds, the imposition of an immigration-related term of hard labor." *Id.* (quoting *Wong Wing*, 163 U.S. at 232–33, 235–38).  The district court in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026),[4] noted that although *Wong Wing* "presented the particularly egregious circumstance of an 'infamous punishment,'" the Supreme Court expressed its holding in terms of the broader protections afforded by the Due Process Clause:

> Applying this reasoning to the fifth and sixth amendments, it must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by those amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law.

*Id.* (quoting *Wong Wing*, 158 U.S. at 238). The court observed that "[i]t makes sense to distinguish between 'rights regarding admission' and other interests that might be protected by the Due Process Clause." *Id.* (citing *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020)).

---

[4]    Although *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, the Court is nonetheless persuaded by the analysis contained within *D.V.D.* Furthermore, undersigned does not stand alone within the District of Arizona in relying upon *D.V.D. See Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *3–4 (D. Ariz. Mar. 9, 2026).

"The Government's countervailing interest, in the entry-fiction context, is its sovereign authority to 'admit [noncitizens] only in such cases . . . as it may see fit.'" *Id.* (citation omitted). "Where that sovereign prerogative is not implicated, however, the legal fiction loses its justification." *Id.* (citing *Zadvydas*, 533 U.S. at 699). "Unsurprisingly then, more than a century of Supreme Court case law confirms that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's admissibility." *Id.* (emphasis in original). Accordingly, where an immigration detainee challenges neither his order of removal nor any of the processes that produced those orders, his claims "do not implicate, nor even "relate[ ] to," the issue of [his] admissibility." *See id.* at *31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)).

In short, neither a bond hearing nor release equates to admission. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, they "will be subject to the same removal proceedings as before, with no new right to remain"). "Thus, Petitioner does not purport to invoke any 'rights regarding admission.'" *Id.* at 110 (quoting *Thuraissigiam*, 591 U.S. at 140); *D.V.D.*, 2026 WL 521557, at *30 ("It makes sense to distinguish between rights regarding admission and other interests that might be protected by the Due Process Clause."). The Court thus concludes that Petitioner has a liberty interest protected under the Fifth Amendment. Petitioner is a "'person[]' within the United States," and the Fifth Amendment therefore "imposes constraints" on any process that deprives her of her liberty interests.

### 2. *Due Process Rights Regarding Petitioner's Prolonged Detention*.

In her Motion for Temporary Restraining Order, Petitioner cites *Mathews v. Eldridge*, 424 U.S. 319 (1976), and argues that she has satisfied each of the three factors required for relief. (Doc. 2 at 8-12).[5] Respondents do not address the *Mathews* test. (Doc. 5).

---

[5]   Under the *Mathews* test, the Court considers:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures

Courts in this circuit and beyond have grappled over what test should be used to determine whether procedural due process requires relief for a noncitizen held pursuant to § 1225(b). *See Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, at *15–17 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor *Lopez* test articulated in *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022)); *Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 U.S. Dist. LEXIS 46838, at *7 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 U.S. Dist. LEXIS 52217, at *22 (S.D. Ind. Mar. 13, 2026) (applying the same 6-factor test, but calling it the *Jamal A* test) (*citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-LL-BJW, 2026 U.S. Dist. LEXIS 10299, at *11–15 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test) (citing *Mathews*, 424 U.S. at 335).

Out of the abovementioned tests, the Court finds the test articulated in *Banda* more suitable than the tests articulated in *Mathews* and *Lopez*.[6] Beginning with *Mathews*, the Court concurs with other district courts that have found that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631 F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure provided is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07.[7]

---

used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

[6] Under the *Lopez* test, "the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

[7] In any event, the outcome applying *Mathews* would be the same—*i.e.*, Petitioner would be entitled to an individual bond hearing. Applying the first *Mathews* element,

Turning next to the *Lopez* test, the Court notes that this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and] are, in essence, a truncated version of the factors enumerated in *Banda*[.]" *Andrews*, 1:25-cv-00333-JLT-HBK, at *14. Because Petitioner is not detained pursuant to § 1226(c), the six-factor *Banda* test is more detailed than *Lopez*[8] and is better suited for noncitizens—like Petitioner—held pursuant to § 1225(b), and the Court accordingly elects to apply it. The Court will thus use the *Banda* test to determine whether Petitioner is entitled to relief.

Under the *Banda* test, the Court considers the following factors:

(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118.

undersigned finds that Petitioner has a strong private interest in her liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'") (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Turning to the second element, considering the prolonged nature of Petitioner's detention, the Court finds a large risk of erroneous deprivation in the absence of an individualized bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (noting that the discretionary parole system envisioned under the Immigration and Naturalization Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention"). Hence, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, regarding the third *Mathews* factor, the government interest in detaining Petitioner without an individualized bond hearing is low. First, "[p]roviding petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 5:21-CV-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."). Therefore, the third factor minimally favors the government. Accordingly, applying the *Mathews* test to Petitioner's more than 15-month detention, undersigned concludes that due process requires she be provided with an individualized bond hearing.

[8] Because the *Lopez* test is a truncated version of the *Banda*, the outcome under *Lopez* would be the same.

          *i.*       *Length of Detention.*

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118.  Under the first *Banda* factor, where a petitioner's current detention exceeds a six-month threshold their "detentions become less and less reasonable." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-cv-00039-TL, 2026 U.S. Dist. LEXIS 56882, at *8 (W.D. Wash. Mar. 18, 2026) (quoting *L.B.O.M. v. Hermosillo*, No. 2:25-cv-02695-GJL, 2026 U.S. Dist. LEXIS 21291, at *8 (W.D. Wash. Feb. 2, 2026). As noted, Petitioner has been held in DHS custody for more than 15 months, well beyond the six-month threshold, and in accord with the length of confinement other courts have found to be prolonged. *See, e.g.*, *Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 U.S. Dist. LEXIS 203614, at *13 (S.D. Cal. Oct. 15, 2025) (noting that 13 months without a bond hearing is prolonged); *cf. Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time.").  Accordingly, the Court finds the length of Petitioner's detention strongly favors granting relief.

          *ii.*       *Likely Duration of Future Detention.*

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain, considering Petitioner's pending appeal before the BIA, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioner.  *See Kadir*, 2025 U.S. Dist. LEXIS 203614, at *8 ("Petitioner's future detention can last several more months or even years during the adjudication of Respondents' appeal to the BIA.").

*iii.    Conditions of Detention.*

The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted).  Petitioner provides a lengthy discussion of—and evidence to support—that her continued detention has exacerbated various medical issues,[9] for which she has had difficulty obtaining treatment.  (Doc. 1 at 5-6).  Respondents do not address these conditions, except to argue that they do not provide a basis for habeas relief. (Doc. 5 at 5-7).  Accordingly, the Court finds that this factor favors Petitioner.

*iv.    Delays in Removal Proceedings.*

Next, the Court shall analyze the "fourth and fifth [*Banda*] factors—both which consider delays caused by the parties—together." *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025).

The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioner. "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up).  Here, Petitioner has appealed the IJ's removal order, and while nothing in the record suggests that such an appeal is dilatory or otherwise not taken in good faith, it cannot operate to her benefit under the *Banda* test.  This factor thus favors Respondents.

The fifth factor considers the delays in removal caused by the government. *Banda*, 385 F. Supp. 3d at 1120. "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other

_____

[9]    Petitioner states that since she has been detained, she has suffered frequently from heartburn and vomiting; has developed white spots on her legs, which have spread to her arms and face; has developed open sores which bleed and cause burning sensations; her menstrual cycle has continued non-stop since approximately October 2025; and she has developed fungal, urine, and stomach infections.  (Doc. 1 at 5-6)

non-ICE government officials." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at \*11 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at \*10–11 (S.D.N.Y. May 23, 2018)).  As previously mentioned, the delays in this action were caused by Petitioner's appeals of the IJ's removal order.  Nothing in the record suggests that any delay has been the product of government action.  Therefore, this factor also favors Respondents.

> v.  *Likelihood of Removal*.

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous*, 2018 WL 2357266, at \*11).  Petitioner has been ordered removed, and her claims for asylum have been denied.  While that order is not final, based on the current record, no evidence has been provided to support that the IJ's order will be overturned on appeal.  Therefore, the sixth factor favors Respondents.

> vi.  *Conclusion*.

Of the six *Banda* factors, three each favor the parties.  However, as discussed, the first factor "is the most important factor." *Banda*, 385 F. Supp. 3d at 1118.  "It is important to bear in mind the context: The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859).  As such, because this factor strongly favors Petitioner, *see supra*, the Court concludes that, on balance, Petitioner's continued detention under § 1225(b)(2) has become unreasonable. Therefore, Petitioner is entitled to relief.[10]

**B. Remedy**.

Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ. *See Galkin*, 2026 U.S.

---

[10]    Because the Court finds that continued detention absent a bond hearing violates Petitioner's procedural due process rights (Claim One), the Court need not reach Petitioner's remaining claims.

Dist. LEXIS 46838, at *12 (finding that "there is no authority" supporting relief in the form of immediate release, but there is authority supporting relief in the form of a bond hearing) (cleaned up); *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."); *Kaur v. Lyons*, 2:26-cv-00217-KML, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendations for a 1225(b)(2) petitioner and granting a bond hearing). At the bond hearing, Respondents bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

Accordingly,

**IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to Petitioner's request for a bond hearing and is **DENIED** as to Petitioner's request for immediate release.

**IT IS FURTHER ORDERED** that a bond hearing shall be held within **SEVEN (7) CALENDAR DAYS** of this order.

1. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community; or

2. In the alternative, the Government shall immediately release Petitioner under appropriate conditions of release.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report with the Court within **THREE (3) DAYS** of the bond hearing.

**IT IS FURTHER ORDERED** that Petitioner's Application for Temporary Restraining Order (Doc. 2) is **DENIED AS MOOT**.

. . . .

. . . .

**IT IS FURTHER ORDERED** that the Clerk of Court must enter judgment accordingly, and close this case.

Dated this 15th day of May, 2026.

_____
Honorable John J. Tuchi
United States District Judge

- 13 -